**Brenda Bailey LOYD, Plaintiff/Appellant,**

v.

**Wendell Ray LOYD, Defendant/Appellee.**

Court of Appeals of Tennessee,
Western Section,
at Jackson.

March 24, 1993.

Application for Permission to Appeal
Denied by Supreme Court
July 26, 1993.

**410**

Mary Jo Middlebrooks, Jackson, for plaintiff/appellant.

Tom Anderson, Lexington, for defendant/appellee.

FARMER, Judge.

In this divorce action, Wife appeals from the trial court's judgment regarding the division of marital property and the failure to award alimony and attorney's fees.

Brenda Loyd (Wife) filed for divorce from Wendell Loyd (Husband), citing irreconcilable differences and cruel and inhuman treatment, on November 28, 1988. An Order of Reconciliation was entered January 4, 1989, but a Notice of Cessation of Reconciliation was filed April 18, 1990. Thereafter, a consent order for support pendente lite was entered whereby Husband agreed to pay Wife $2,000 per month as temporary support and furnish her with a car and gasoline.

The parties were married May 2, 1961. One child was born of the marriage on October 9, 1962. Wife graduated from high

school and received vocational training in cosmetology. Husband has an eighth grade education. Wife's employment history includes work as a hairdresser and secretarial work (typing and book work) for various companies. During the marriage, she also "kept books" for Husband to assist him in his jobs. The parties began Loyd's Telephone (Loyd's)[1] in 1982, operating the business from their home. Wife performed various duties for the company including answering telephone calls, assisting the customers and bookkeeping. Husband sold and installed the equipment.

Wife suffers from various physical illnesses including insulin dependent diabetes, bursitis, spastic colitis, thyroid problems, chronic tendonitis and recurrent urinary tract infection. Husband endures "pain and discomfort" from a back disorder, but is not receiving treatment for this ailment.

At the time of the hearing, on April 22, 1991, Wife was age 49 and Husband was 50. Michael Hewitt (Hewitt), a certified public accountant, testified as to the value of Loyd's on Wife's behalf. According to his evaluation report, using a "combination of several methods," the business was valued at $267,986.[2] Another CPA, testifying in Husband's behalf, valued the business at $52,733.

By letter to the attorneys dated September 25, 1991, the Chancellor valued the business at $287,884 and awarded it to Wife. Husband was awarded the marital residence, shop equipment, the Ford Festiva and the two IRAs. Furniture and appliances were divided equally between the parties. Wife was not awarded alimony. Each party was ordered to pay his own attorney's fees.

In November 1991, Wife filed a "motion to reconsider" asserting that, since the Chancellor's letter ruling, Husband had "systematically drained all value from the business." Wife stated that Husband established a competing business, using customer lists and other information from Loyd's and had, in essence, transferred the business to a new company. She asserted that he had taken

1. The business, which involves the sale and installation of telephone systems, was later incorporated.

2. Hewitt testified that altogether four methods were utilized and with each method "weighted," the value of the business was $287,884.

customer calls from Loyd's and serviced them through the new company by the use of a telephone line in the residence which he refused to relinquish. She also insisted that Husband had kept no books since January 1991 and had stalled her efforts to establish an orderly transfer of the assets. She concluded that the inventory of the business was of an undeterminable value and that the liquidation value was marginal.

A final decree having not yet been entered, a further hearing was conducted by the Chancellor on December 10, 1991. Hewitt again testified on behalf of Wife regarding the value of the business. After reviewing lists of the assets, inventory, liabilities and accounts receivable, Hewitt determined the value, at that time, at a negative $3,015. He stated that he could not assign any value to the inventory, for upon review, "it looked like a bunch of junk" and opined that the business was of no sellable value since Husband was competing with it. Hewitt testified that he applied the same valuation method (formula approach) as he had in his previous valuation of the business. He attributed part of the difference to the fact that, as of December 10, 1991, the business had no intangible value. According to Hewitt, "[t]he intangible value that we arrived at the first time was on the assumption that both stockholders could sell the company and would sign non-compete agreements. A company is of no value to a buyer if the owner is going to compete with it." Hewitt concluded, however, that the main difference in his two valuations was that the tangible value (hard assets minus liability) had declined.

A final decree was entered December 31, 1991, granting a divorce to Wife on grounds of inappropriate marital conduct and incorporating the court's findings as contained in the September 25, 1991, letter without change. The court retained the value of the business at $287,884 and valued the two IRAs at $11,301.96 each. The Chancellor made no finding as to the value of the marital residence, the shop equipment and the Ford Festiva. Wife valued the home at $65,000 and Husband at $60,000. Wife valued the

shop equipment at $30,803 and Husband valued it at $6,330.

Wife raises the following issues on appeal:

1. Whether the court erred in the division of marital property.

2. Whether the court erred in failing to award Wife alimony.

3. Whether the court erred in failing to award Wife litigation expenses.

■ We first consider whether the court erred in the division of marital property. The trial court has wide discretion in dividing the marital estate upon divorce. *Lancaster v. Lancaster*, 671 S.W.2d 501, 502 (Tenn.App. 1984). Our review of findings of fact is *de novo* upon the record, with a presumption of correctness unless the evidence preponderates otherwise. T.R.A.P. 13(d).

The trial court found that the value of Loyd's was $287,884. Upon review of the record, we conclude that the trial court reached this determination by considering the testimony of Mr. Hewitt, who stated that the business was worth $287,880 to someone "who has been in the business" and that it was worth that much to Wife "[i]f she had the ability to operate it." Thus, we believe it logical for the learned Chancellor to have concluded that an equitable distribution was made when he awarded a $287,000 business to Wife on the assumption that the business would continue to prosper and constitute a means for her livelihood.

■ After review of the record, however, we find that the evidence does preponderate against the court's finding as to the value of the business (as awarded to Wife). Valuation decisions will be set aside on appeal, even if within the range of proof, if they are contrary to a preponderance of the evidence. *Waits v. Waits*, No. 01–A–01–9207–CV–00288, slip op. at 6, 1993 WL 49564 (Tenn. App. filed Feb. 26, 1993) (citing *Hein v. Hein*, 366 N.W.2d 646, 650 (Minn.Ct.App. 1985)). Mr. Hewitt testified, at the original hearing, that Loyd's was worth $287,880 to someone with experience in the business, but not to someone with "no experience." He defined experience as "management-capability and technical capability" and stated that

he would not recommend that anyone buy it without technical capability.

Our review of the record leads us to conclude that Wife lacks the technical experience to successfully operate this business. By her own admission, she lacks such capabilities. We are aware that Wife testified that she could get someone to assist her in the business. However, this is not our only consideration. There is evidence in the record that Husband operated a business in direct competition with Loyd's and that this resulted in a marked decline in its value.

T.C.A. § 36–4–121(c) requires the equitable distribution of the marital estate, according to the factors contained therein. *Waits,* slip op. at 7. We find that an equitable distribution of the estate necessarily involves an award of the business to Husband. Husband clearly has the technical expertise to conduct the business and the record reveals that it was profitable during the years of his operation. We hold the trial court's determination as to the value of the business (as awarded to Husband) proper. We also find the Chancellor's award of the shop equipment and Ford Festiva proper. As to the remaining marital property, we find that equitably Wife should be awarded the marital residence and the two IRAs. We assume that, since this matter was appealed, these assets are still intact. However, if they have been liquidated, Wife is entitled to the cash equivalent of each. If the marital residence has been liquidated, Wife is entitled to the cash equivalent of $65,000.

We also find it necessary to make a distributive award of money to Wife to effectuate the distribution of the marital estate as provided in T.C.A. § 36–4–121(f)(1).[3] We

find an award of $99,000, payable at $412.50 per month, beginning May 1, 1993, for 20 years, or until Wife dies, whichever occurs first, appropriate.

■ In summary, Husband is awarded the business worth approximately $287,000 to him, the shop equipment valued at $6,330 by him and the Ford Festiva. Wife is awarded the marital residence, valued by her at $65,000, the two IRAs, worth $11,301.96 each and an additional $99,000. We find that this is an equitable distribution of the marital estate and that the trial court erred in its division of the property.

■ We next consider whether the lower court erred in failing to award Wife alimony. The trial court has broad discretion in determining whether to award alimony. *Lancaster v. Lancaster,* 671 S.W.2d at 502. The decision is factually driven and requires a balancing of the factors listed in T.C.A. § 36–5–101(d). *Waits,* slip op. at 9. Of these factors, need and the ability to pay are the most critical. *Lancaster,* 671 S.W.2d at 503 (citing *Aleshire v. Aleshire,* 642 S.W.2d 729, 733 (Tenn.App.1981)).

■ In the instant case, the record clearly reveals the "need" of Wife. By affidavit, she states that she is unemployed and her sole means of support has been the support pendente lite ordered by the court.[4] She lists her monthly expenses at $2,331.88.[5] Wife also endures numerous health problems which have and will continue to affect her ability to seek and maintain employment. Dr. Semrau, a clinical psychologist and vocational expert, testified that Wife's physical problems[6] are extensive and will affect her emotions "as time continues." Dr. Semrau questioned whether Wife could sustain em-

---

**3.** **36–4–121. Distribution of marital property.—** *(f)(1) If, in making equitable distribution of marital property, the court determines that the distribution of an interest in a business, corporation or profession would be contrary to law, the court may make a distributive award of money or other property in order to achieve equity between the parties. The court, in its discretion, may also make a distributive award of money or other property to supplement, facilitate or effectuate a distribution of marital property.*

**4.** The proof shows that Wife also received $500 per week as a salary from Loyd's, since its trans-

fer, but that this amount was not likely to continue due to Husband's competing business.

**5.** With the award of the marital residence to Wife, $449 (house payment/rent) can be deducted from this amount. We note, however, that car payment and car insurance expenses were not included in this total, as these were paid by Loyd's.

**6.** The record includes letters from Wife's treating physicians attesting to her various physical problems.

ployment on a 40 hour a week basis, but stated that she could possibly sustain work for 20 to 32 hours a week if she were allowed rest periods and time for insulin injections. The Chancellor found that Wife "probably needed" alimony, but failed to award any because the Court "considered the needs of [Wife] ... in awarding the business ... to [her]...." We have determined that Loyd's is not a viable business for Wife. Therefore, we conclude that her "need" has been established.

■ As to Husband's ability to pay, his Affidavit of Assets and Liabilities establishes his gross pay at $275 per week and his monthly living expenses at $1,095. A review of the parties' joint tax returns from 1986 through 1989 reveals that the couple reported the following incomes for each respective year: $49,471; $35,967; $59,987; and $73,817. Wife's affidavit states that the parties' income was generated solely by the operation of Loyd's. The tax returns support this assertion with the exception of a nominal amount attributed to interest income. Thus, Loyd's has averaged over $50,000 per year in income for the years 1986 through 1989. With Husband's continued operation of the business, we see no reason why it should not remain profitable. Therefore, we find that Husband's ability to pay has been established and award Wife alimony in the amount of $1,000 per month, beginning May 1, 1993, and continuing until her death or remarriage.

Our review of the trial court's factual findings is *de novo* with a presumption of correctness unless the evidence preponderates otherwise. T.R.A.P. 13(d). Considering the above cited factors, along with the others enumerated in T.C.A. § 36–5–101(d), we find that the evidence does preponderate against the trial court's finding that no alimony be awarded and award the amount as set forth above.

■ We now consider whether the trial court erred in failing to award Wife litigation expenses. The trial court has wide discretion in determining whether to require one spouse to pay for the other's legal expenses incident to divorce litigation. *See, Wallace v. Wallace,* 733 S.W.2d 102, 110–11 (Tenn.App. 1987). In view of our decision, we find no error by the trial court in failing to award litigation expenses to Wife.

The judgment of the trial court is reversed in part and affirmed in part. Costs are taxed one-half to Appellant and one-half to Appellee, for which execution may issue if necessary.

TOMLIN, P.J. (W.S), and CRAWFORD, J., concur.