**IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION**
**AT JACKSON**

_____

|  |  |  |
|---|---|---|
| **DEBORAH JOANNE CUPPLES PLUNK**, | ) | Chester County Chancery Court |
|  | ) | No. 8847 |
|  | ) |  |
| Plaintiff/Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9702-CH-00040 |
|  | ) |  |
| **EDWARD LEE PLUNK**, | ) |  |
|  | ) |  |
| Defendant/Appellee. | ) |  |
|  | ) |  |

FILED

November 24, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

_____

From the Chancery Court of Chester County at Henderson.
**Honorable Joe C. Morris, Chancellor**

**Michael B. McWherter**, SPRAGINS, BARNETT, COBB & BUTLER, Jackson, Tennessee
Attorney for Plaintiff/Appellant.

**Harold F. Johnson**, Jackson, Tennessee
Attorney for Defendant/Appellee.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**LILLARD, J.**: (Concurs)

Plaintiff Deborah Joanne Cupples Plunk (Wife) appeals the final divorce decree entered by the trial court which awarded custody of the parties' two children to the Wife, ordered Defendant/Appellee Edward Lee Plunk (Husband) to pay child support and rehabilitative alimony to the Wife, and distributed the parties' real and personal property. We affirm.

The parties were married for twenty-six years and had two daughters, who were thirteen and fifteen years of age at the time of trial. The parties' primary source of income during the marriage was their retail western-wear store, Boots For Less. Until the time of their separation, both parties worked full-time at the store. The Husband did the paperwork for the store and sold merchandise. The Wife waited on customers, stocked inventory, maintained the store's computer inventory system, cleaned, and performed other tasks as required. The Wife participated in the management of the store and was capable of running the store when the Husband was not there.

The parties 1992 and 1993 tax returns, respectively, indicated total income of $83,947 and $63,252. Although the tax returns attributed this income solely to the Husband, it was undisputed that neither party drew a set salary from Boots For Less and that most of this income was generated by the store, where both parties worked full-time. The parties also earned a small income from their activities as licensed bail bondsmen and from rental properties which they acquired over the years, including the Magic Valley property on which Boots For Less was located and various residential properties.

At the time of trial, the Wife was forty-three years old and had a high school education. Most of her job experience came from working at Boots For Less. After the parties' separation, the Wife contacted other retail stores to inquire about employment opportunities. The Wife did not think it would be a problem for her to find a new job.

The Husband had a high school education and some college education and military experience. Like the Wife, most of the Husband's job experience came from his employment at Boots For Less. The Husband also owned a one-half interest in two Subway restaurants, which he formerly valued at $25,000; however, the Husband testified that the Subways had no value at the time of trial because their debts exceeded their assets. According to the Husband, the Subways owed

$38,041.35 to their suppliers and $27,246.57 in back taxes. During the year prior to the divorce, the Subways earned no profits.

In the final divorce decree, the trial court divided most of the parties' marital property equally, with all real property to be owned by the parties as tenants in common. The marital estate, which was valued in excess of $900,000, included, but was not limited to, the following properties:

| PROPERTY | APPROXIMATE VALUE |
|---|---|
| Magic Valley property | $ 175,000 |
| Marital home | $ 150,000 |
| 26 acres adjacent to marital home | $ 104,000 |
| Accounts receivables | $ 376,500 |
| Residential rental properties (equity) | $ 40,000 |
| Morgan Keegan accounts | $ 41,400 |
| Boots For Less | Unknown[1] |

Rather than ordering a distribution of the proceeds from the sale of the parties' real property, the trial court ordered that the proceeds be deposited with the court clerk to be disbursed later pursuant to court order or agreement of the parties. The trial court awarded the Husband his interest in the Subway restaurants.

In addition to distributing the parties' property, the trial court ordered the Husband to pay rehabilitative alimony to the Wife in the amount of $400 per month for a period of twenty-four months and to pay child support in the amount of $798.66 per month. In calculating the Husband's child support obligation, the trial court attributed $40,000 of the parties' total income for 1993 to the Husband.

On appeal from the final divorce decree, the Wife contends that the trial court erred (1) in calculating the Husband's income for purposes of determining child support, (2) in failing to

---

[1]A special master was appointed to oversee the liquidation of Boots For Less.

award permanent alimony to the Wife, (3) in failing to award the Wife any interest in the Subway restaurants, and (4) in failing to provide for a definite distribution of proceeds upon the sale of the parties' real property.

We first reject the Wife's argument that the trial court erred in attributing only $40,000 in gross income to the Husband for purposes of establishing his child support obligation when the parties' tax returns showed a much greater income. At trial, the Wife requested that the trial court award child support based on the Husband's total income of $63,252 as reported on the parties' 1993 tax return. Although the parties' joint tax return for 1993 attributed all of this income to the Husband, it was undisputed that most of the $63,252 amount represented income from the parties' business, Boots For Less, that both parties worked full-time at the business, and that this income resulted from the efforts of both parties. Accordingly, we hold that the trial court did not err in apportioning $40,000 of the $63,252 amount to the Husband as income for purposes of calculating child support.

As part of this issue, the Wife contends that the trial court erred in failing to require the Husband to maintain insurance on his life and to name the parties' children as beneficiaries of the policy. *See* T.C.A. § 36-5-101(g) (1996). Inasmuch as there has been no showing of a timely request to the trial court for this relief, we decline to grant such relief on appeal. *Mayfield v. Mayfield*, No. 01A01-9611-CV-00501, 1997 WL 210826, at *7 (Tenn. App. Apr. 30, 1997). The Wife also contends that, in calculating the Husband's gross income for purposes of determining child support, the trial court erred in failing to include depreciation and other amounts and in failing to average the Husband's income as shown on the parties' 1992 and 1993 tax returns. *See* Tenn. Comp. R. & Regs. chs. 1240-2-4-.03(3)(a), 1240-2-4-.04(e) (amended 1994). The Wife, however, did not raise these arguments below. Instead, she requested that the trial court establish the Husband's child support obligation based on the $63,252 in total income reported on the parties' 1993 tax return. Under these circumstances, the Wife has waived these sub-issues for purposes of appellate review. *Barnhill v. Barnhill*, 826 S.W.2d 443, 458 (Tenn. App. 1991).

Even if the Wife properly preserved these arguments, we still would affirm. If, as the Wife argues, depreciation is added back to the parties' 1992 income and the 1992 income is then

averaged with the parties' 1993 income, the result is an average gross income of $77,950. Inasmuch as this figure represents the combined income of both parties, we conclude that the trial court properly allocated over fifty percent of this income to the Husband for purposes of determining the Husband's child support obligation.[2]

We also affirm the trial court's decision to award the Wife rehabilitative alimony in the amount of $400 for a period of twenty-four months in lieu of the $2,000 per month in periodic alimony requested by the Wife at trial. The trial court has broad discretion in determining whether to award alimony. *Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn. App. 1993). In deciding the amount and type of alimony to be awarded in this case, the trial court was required to consider the following factors:

> (A)     The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (B)     The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
>
> (C)     The duration of the marriage;
>
> (D)     The age and mental condition of each party;
>
> (E)     The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
>
> (F)     The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
>
> (G)     The separate assets of each party, both real and personal, tangible and intangible;
>
> (H)     The provisions made with regard to the marital property as defined in § 36-4-121;
>
> (I)     The standard of living of the parties established during the marriage;

---

[2]As for the Wife's argument on appeal that deductions for advertising and car expenses should be added back to the parties' gross income, our review of the record reveals no evidence to support the Wife's contention that these expenses were excessive. *See* Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(3)(a) (amended 1994).

(J)     The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K)     The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L)     Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

T.C.A. § 36-5-101(d)(1) (1996).  Of these factors, need and the ability to pay are the most critical. *Loyd*, 860 S.W.2d at 412.

The evidence in this case demonstrated that the parties were similarly situated in terms of their respective educations, job training, earning capacities, and assets.  Both parties had high school educations, and both parties' primary job experience was working together in their business, Boots For Less.  The Wife, who was forty-three years old at the time of trial, testified that she did not think it would be difficult for her to obtain other employment in the retail industry.  The Husband was uncertain as to his future employment prospects.  Moreover, the Wife, like the Husband, was awarded one-half of a marital estate valued in excess of $900,000.  In light of these factors, we conclude that the trial court did not err in refusing to award periodic alimony to the Wife. *Barnhill*, 826 S.W.2d at 454-56.

As for the property issues raised on appeal by the Wife, we affirm the trial court's decision to award the Husband his interest in the two Subway restaurants and to allocate to the Husband any debt associated therewith.  Trial courts have broad discretion in dividing marital estates, and their decisions are afforded great weight on appeal. *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983); *Harrington v. Harrington*, 798 S.W.2d 244, 245 (Tenn. App. 1990).  In light of the Husband's testimony that the debts of the Subway restaurants exceeded their value, we conclude that the trial court did not abuse its discretion in declining to award the Wife any interest in the restaurants.  We likewise conclude that the trial court did not abuse its discretion in requiring that the proceeds from the sale of the parties' real property be deposited with the court clerk prior to distribution of the funds.

As a final matter, we deny the Wife's request for an award of attorney's fees on appeal.

The final divorce decree entered by the trial court is affirmed.  Costs of this appeal are taxed to the Wife, for which execution may issue if necessary.

_____
FARMER, J.


_____
CRAWFORD, P.J., W.S. (Concurs)


_____
LILLARD, J. (Concurs)