IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 7, 2000 Session

## EDWIN L. JAVIUS v. VICTORIA JAVIUS

**Appeal from the Chancery Court for Williamson County**
**No. 24613    Jeffrey S. Bivins, Judge**

---

**No. M2000-00314-COA-R3-CV - Filed January 11, 2001**

---

After a stormy and sometimes violent marriage, the trial court awarded a divorce to the wife, divided the marital property, and ordered the husband to pay alimony. The husband claims on appeal that the wife's fault should have resulted in the divorce being granted to both parties; that the property was divided in an inequitable manner; and that the trial court should have ordered rehabilitative alimony rather than alimony in futuro. We affirm the grant of divorce to the wife and the property division, but modify the alimony award.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part; Modified in Part; and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

Michael Louis Heyman, Nashville, Tennessee, for the appellant, Edwin L. Javius.

Patricia A. McDade, Franklin, Tennessee, for the appellee, Victoria Javius.

**OPINION**

### I.
#### A MARRIAGE AND A DIVORCE

Edwin Javius began a relationship with Victoria Parker in 1975. The couple produced three children, and married in 1981. They lived in Detroit, where Mr. Javius worked in a General Motors auto plant. In 1989, he took a job with Saturn, and the parties moved to Tennessee.

Mr. Javius was hard-working, and was always a good provider for his family, but the evidence showed that he was also physically abusive to his wife. While Mr. Javius denies some of the incidents testified to by his wife, he admitted that he broke her jaw when the couple was still living in Detroit, and the proof shows that he was twice convicted of assaulting her in Tennessee.

The second conviction resulted from an incident that occurred on February 22, 1997. Mr. Javius allegedly swung at his wife with a bottle. The police were called, and they took him to jail. Perhaps because they were familiar with the injuries that Victoria Javius suffered from a 1996 assault, the police suggested that she leave the marital home for her own safety. She went to a shelter for a while, spent a few nights in her car, and eventually moved in with the couple's grown son.

When Edwin Javius was released from jail, he discovered that his wife was gone. On April 2, 1997, he filed a Complaint for Divorce on the ground of irreconcilable differences. He attempted to serve Ms. Javius with the divorce papers at her "last known address" (the marital home) by registered mail. Of course service was unsuccessful. Attempts to serve her by mail in care of her brother in California, and her father and her sister in Arizona, were also unsuccessful.

Mr. Javius then moved the court to order service by publication, which was granted. After four consecutive weeks of publication notice, he moved the court for a default judgment, which was granted after a hearing. A Final Decree of Divorce, entered on August 15, 1997, awarded custody of the parties' last minor child to the wife, but contained no provision for child support. The parties were each awarded the property currently in their possession or in their name only, including all the retirement benefits that were solely in Mr. Javius' name (Victoria Javius had no retirement benefits). The court also awarded sole title to the marital residence to Mr. Javius, and authorized him to sell it so he could pay off marital debt. He refinanced the mortgage on December 18, 1997, and later sold the home.

On August 12, 1998, Victoria Javius filed a Rule 60 Motion to Set Aside the Decree of Divorce. She claimed that she had no knowledge of the proceedings until they were concluded, and that her husband could have learned where she was by talking to her children, but that he never made the attempt. The affidavits of her brother, father and sister indicated that the letters Mr. Javius sent to them were all returned unclaimed because they were all addressed incorrectly.

On November 18, 1998, the trial court set aside the final decree, and gave the parties permission to enter an order of divorce by agreement, nunc pro tunc relating back to the date of the final decree, with all issues of property division and alimony reserved for further hearing. Ms. Javius apparently prepared such an order, but it was never filed with the trial court.

The final hearing of this case was conducted by the trial court on October 12, 1999. The parties were the only witnesses to testify. Following the hearing, the court granted Victoria Javius an absolute divorce on the grounds of inappropriate marital conduct and cruel and inhuman treatment. The decree stated that "the parties shall be divorced as of October 12, 1999," and divided the marital property on terms significantly different from those obtained by Mr. Javius in the default judgment. Victoria Javius was awarded one-half of the proceeds from the refinancing and sale of the marital home, one half of her husband's Saturn retirement plan, and one-half of that portion of his General Motors retirement plan which was earned after the parties' marriage. The court also

awarded Ms. Javius $700 per month as alimony in futuro, and her attorney fees of $4,275. Mr. Javius subsequently filed a Motion for a New Trial, which was denied. This appeal followed.

## II.
### THE QUESTION OF FAULT

Mr. Javius claims that the trial court erred in awarding the divorce to his wife, because her conduct towards him also amounted to cruel and inhuman treatment. He testified that while he worked long and hard hours, his wife dissipated the marital assets, verbally abused him, sided with their children against him, and wrote bad checks that he had to pay off in order to keep her out of jail. He also claimed that the incident which resulted in his 1996 assault conviction began when she hit him with a Coke bottle. Her testimony confirmed that on that occasion, she did strike the first blow.

An award of divorce to one spouse does not amount to a finding that the other was blameless. It indicates, rather, a determination by the trial court that the fault of one party outweighs that of the other. We have carefully read the transcript of evidence in the present case, and it appears to us that even if we resolve all conflicts in testimony in the husband's favor, the recurrent physical abuse inflicted by Mr. Javius on his wife outweighs all of the faults on her part that he alleged.

Edwin Javius worked hard at his job, and took all the overtime he could. He left all household matters to his wife, including raising the children and paying all the bills, and he blamed her for anything that went wrong. For example, he blamed her entirely for the fact that none of the children finished high school, despite his own lack of involvement in their studies or with the problems they were encountering at Fairview High School. His method of dealing with the failure of family members to meet his expectations was by verbal or physical abuse. He admitted to breaking his wife's jaw when the couple lived in Detroit, but denied that he threw her down a flight of stairs while they were living in Fairview.

In February of 1996, the parties were arguing in their bedroom, and Mrs. Javius became afraid that her husband was about to start beating her. She attempted to leave the room, but he blocked her way, so she hit him with a coke bottle. He responded by taking the bottle from her and hitting her with it so hard that it lacerated her scalp all the way to the skull. According to her testimony, he then beat her with a board, and dragged her by her braided hair, while threatening to kill her. She started praying, and he eventually calmed down and took her to the emergency room. Hospital personnel called the police, who arrested Mr. Javius. Photos taken in the hospital of his wife's swollen and bloodied face give some idea of the damage inflicted on her.

Mr. Javius was eventually convicted of assault and sentenced to 11 months and 29 days imprisonment, which was suspended to time served. The court also issued a restraining order to prevent him from returning to the marital home. However, Victoria Javius eventually allowed him to return. Her attorney asked her on the stand why she stayed with her husband despite his abuse, and Ms. Javius responded, "Because I had his children, his three children, and I figured, if I got out

there on my own, I couldn't support my children and give them a home or something. And then you always think that maybe he'll stop or something or maybe things will get better and this stuff wouldn't go on anymore. But it did."

The actions of Mr. Javius placed his wife in a cruel dilemma. In her mind, she had to choose between submitting to her husband's abuse or losing the financial support she and her children needed. We have no doubt that the trial court acted correctly in granting her the divorce.

## III.
### PROPERTY DIVISION

Tenn. Code. Ann. § 36-4-121 authorizes the courts to equitably divide the marital property of divorcing parties without regard to fault. The statute defines marital property as property acquired during the course of the marriage, and also,

> "income from, and any increase in value during the marriage, of property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation and the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage."

Tenn. Code. Ann. § 36-4-121(b)(1)(B). The statute further defines substantial contribution as follows:

> "As used in this subsection, 'substantial contribution' may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine."

Tenn. Code. Ann. § 36-4-121(b)(1)(C).

Mr. Javius had acquired two retirement accounts through his work. The trial court awarded his wife one-half of that portion of the General Motors retirement plan that accrued between the marriage of the parties in 1981, and the date of their divorce, October 12, 1999. The court also awarded the appellee one-half of the value of the 401(k) plan that Mr. Javius earned at Saturn, which entirely accrued during the course of the marriage.

The appellant argues that his wife should only have been allowed to share in both plans to the extent of the value accrued before March of 1997, when she left the marital home. He claims that she cannot be considered to have contributed to the preservation or appreciation of either account in any way, after she "deserted" him. He uses the same argument to assert that Ms. Javius should not have been awarded half of the proceeds from the sale of the marital home. In both cases,

he contends that giving his wife an undiminished share of the property unjustly enriches her for deserting the marital home.

However, our understanding of the parties' situation leads us to the opposite conclusion. It appears to us that it would be inequitable to penalize Victoria Javius for leaving the marital home when she justifiably feared for her own safety. Such a ruling could provide an incentive for abuse, for it would reward a husband who succeeded in driving his wife away by giving him an increased share of the marital property.

It is also relevant that Mr. Javius did not provide any meaningful support to his wife after their separation. The proof shows that he only gave her one hundred dollars in the more than two years between the time she left the marital home and the date of the divorce. Thus, any failure on her part to contribute to the preservation or appreciation of the marital property during the period in question is balanced by her husband's failure to perform his duty of support.

## IV.
### ALIMONY

The legislature has set out numerous factors for the courts to consider in awarding alimony. Tenn. Code. Ann. § 36-5-101. Among these factors are the relative earning capacity of the parties, their ages, physical and mental condition, the duration of the marriage, and their relative fault for the breakdown of the marriage. Extrapolating from the statute, this court has stated that the most important factors for the courts to consider are the need of the obligee spouse, and the ability of the obligor to pay. *Loyd v. Loyd*, 860 S.W.2d 409 (Tenn. Ct. App. 1993). The legislature has also expressed a preference for rehabilitative alimony as follows:

> It is the intent of the general assembly that a spouse who is economically disadvantaged relative to the other spouse be rehabilitated whenever possible by the granting of an order for payment of rehabilitative temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support or maintenance on a long-term basis or until the death or remarriage of the recipient . . . .

Tenn. Code. Ann. § 36-5-101(d).

The proof shows that Victoria Javius was 47 years old at the time of the final hearing, and a high school graduate. She mostly stayed home during the marriage, but with the agreement of her husband, she obtained and held down several jobs for relatively brief periods. The most lucrative job she ever had was with Metro Government. The job paid $1500 per month, but she quit because she believed some of her co-workers were talking about her. She stipulated at trial to an earning capacity of $1500 per month.

-5-

Ms. Javius filed with the court an income and expense statement that showed monthly expenses of $2,229, including rent, food, utilities, and car operation. She explained under cross-examination that because she was living with her son, she was not actually spending that amount every month, but that she would require that much if she were to live independently.

Edwin Javius, 57 years old at the time of trial, only had an eighth grade education, but he is a skilled and experienced autoworker, with an earning capacity that far exceeds that of his wife. His W-2 form for the year 1998 shows a gross income of $53,065. Records from prior years show that he achieved similar results, and that earnings from overtime were a substantial part of his income.

The trial court ordered Mr. Javius to pay his wife $700 per month as permanent alimony, or alimony in futuro. The appellant argues that Ms. Javius does not need more than a nominal amount of support, and that any support awarded to her should have been in the nature of rehabilitative alimony rather than permanent alimony.

We believe that the amount of support ordered is responsive to the needs of Ms. Javius, and to Mr. Javius' ability to pay. If she can obtain another job that pays as well as Metro government, then the alimony payments should be enough to enable her to meet her own needs without having to rely on her children. There is little doubt that Edwin Javius can afford to pay this amount from his current earnings.

In regard to the question of whether rehabilitative alimony or alimony in futuro is the more appropriate form of support in this case, we are somewhat hampered by the lack of proof in the record as to whether Victoria Javius might be able to earn more than the stipulated $1500 per month. But there was no proof that she was in poor health, and while she has had only limited work experience, the record indicates that she did reasonably well in every job she held. We acknowledge that it appears unlikely, given her age, educational background and limited workplace experience, that she will ever match her husband's earning capacity, but that does not preclude her from being a candidate for rehabilitative alimony. *See Crabtree v. Crabtree*, 16 S.W.2d 356 (Tenn. 2000).

In view of the legislative purpose of encouraging divorced spouses to become self-sufficient, rehabilitative alimony should probably be awarded whenever there is a reasonable chance for rehabilitation. Given her marital history, it also appears to us that Ms. Javius would be better off if she did not have to depend on her former husband for financial support. For the time being, of course, she does need such support. We therefore modify the trial court's decree to make the alimony obligation rehabilitative, for a period of ten years. We note that rehabilitative alimony remains within the jurisdiction of the court during the pendency of the award, and may be modified if there is a material change in the recipient's prospects for economic rehabilitation. *Crabtree v. Crabtree*, 16 S.W.2d 356, 360 (Tenn. 2000).

## V.

That portion of the trial court's order granting the divorce to Ms. Javius and dividing the marital property is affirmed. The award of $700 per month in permanent alimony is modified to rehabilitative alimony, which is to be paid by the appellant for a period of ten years from the date of the final decree. Remand this cause to the Chancery Court of Williamson County for further proceedings consistent with this opinion. Tax two-thirds of the costs on appeal to the appellant, Edwin Javius, and one-third to the appellee, Victoria Javius.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.