# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 22, 2002 Session

## PATRICIA ANNE RIDGEWAY v. JIMMY CLARKE KIMBALL

### Appeal from the Chancery Court for Knox County
No. 144339-2     Daryl Fansler, Chancellor

### <u>FILED NOVEMBER 5, 2002</u>

### No. E2001-02577-COA-R3-CV

---

The sole issue for our review in this divorce case is whether the Chancellor erred in ordering the Appellant, Jimmy Clarke Kimball ("Husband") to pay alimony *in futuro* in the amount of $1,000 per month to the Appellee, Patricia Anne Ridgeway ("Wife"). We find that the Chancellor properly considered the applicable statutory factors and that the evidence does not preponderate against his decision to award alimony *in futuro* rather than rehabilitative alimony. Consequently, we affirm the Chancellor's judgment.

**Tenn.R.App.P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Jerrold L. Becker, Knoxville, for the Appellant, Jimmy Clarke Kimball

John P. Valliant, Jr., Knoxville, for the Appellee, Patricia Anne Ridgeway

## OPINION

The parties were married on December 2, 1978. On September 8, 1999, Wife filed this action for divorce. After hearing the proof, the Chancellor granted Wife a divorce on the grounds of inappropriate marital conduct. The parties have one child, born March 15, 1986. The Chancellor ordered that the parties continue the custody arrangement in place at the time of trial, which provided that the child stay with the Husband nine days per two-week period, and with the Wife the remaining five days. Regarding the marital property division, the Chancellor held "that given all circumstances in this case and considering the duration of the marriage an equitable division of the property would be an equal division of property." The Chancellor ordered Husband to pay Wife alimony *in futuro* in the amount of $1,000 per month.

On appeal, Husband argues that the *in futuro* alimony award was erroneous, and that the evidence supported, at most, a short-term rehabilitative alimony award.

We review the Trial Court's findings of fact *de novo* upon the record of the proceedings below, with a presumption of correctness "unless the preponderance of the evidence is otherwise." Tenn. R.App. P. 13(d); see also *Hass v. Knighton*, 676 S.W.2d 554 (Tenn.1984). There is no presumption of correctness with regard to the trial court's conclusions of law, and those conclusions are reviewed *de novo*. *Jahn v. Jahn*, 932 S.W.2d 939 (Tenn.Ct.App.1996).

The Trial Court has broad discretion in determining an award of alimony. *Loyd v. Loyd*, 860 S.W.2d 409 (Tenn.Ct.App.1993). This wide discretion includes the decision as to whether an award of alimony should be rehabilitative or *in futuro*. *Crabtree v. Crabtree*, 16 S.W.3d 356 (Tenn. 2000). The decision is factually driven and requires a balancing of the factors listed in T.C.A. 36-5-101(d). *Loyd v. Loyd*, 860 S.W.2d 409 (Tenn.Ct.App.1993). Accordingly, this Court is not inclined to alter a trial court's award of alimony unless it is unsupported by the evidence or is contrary to the public policy embodied in the applicable statutes. *Brown v. Brown*, 913 S.W.2d 163 (Tenn.Ct.App.1994).

In determining an alimony award, the Trial Court is required to consider the following factors, codified at T.C.A. 36-5-101(d)(1):

> (d)(1) It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
>
> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and

the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Our Tennessee courts have repeatedly noted that, "while all of the above factors must be considered in arriving at a decision regarding spousal support, the two most important factors are the demonstrated need of the disadvantaged spouse and the obligor spouse's ability to pay." *Hopkins v. Hopkins*, an opinion of this Court filed in Knoxville on October 23, 2002 (citing *Anderton v. Anderton*, 988 S.W.2d 675 (Tenn.Ct.App. 1998); internal quotation marks omitted); *Robertson v. Robertson*, 76 S.W.3d 337 (Tenn. 2002).

In the present case, Wife holds a doctorate degree in clinical psychology, and she owns an incorporated private psychological practice. In 1998, Wife was diagnosed with fibromyalgia, and

she testified that as a result of the effects of this disease, she was forced to reduce the number of her working hours. Wife presented the testimony of Dr. Jay Henderson Warrick, her treating physician. Dr. Warrick testified that although Wife is presently able to continue her clinical psychology practice, her medical condition does cause "some degree of impairment virtually every day." Dr. Warrick stated that Wife has a history of flare-ups of her fibromyalgia, which would reasonably require her to cut back on her practice. Wife testified that, with Husband's encouragement, she cut her clinical working hours to about 20 per week after her diagnosis. In September of 1999, after filing for divorce, she increased her hours to about 30 per week.

Wife earned $36,000 in gross income for the years 1998 and 1999. At trial she filed an affidavit of her corporation's monthly income and expenses, which shows a total net income of $13 per month. Wife draws a monthly salary of $2,500 from the corporation. Her affidavit of personal monthly income and expenses shows a deficit of $904 per month. We agree with the Chancellor that Wife has demonstrated a need for support.

Husband, a pediatrician, does not dispute that he has the ability to pay alimony. He testified that his current yearly salary income is $125,000 and that he also makes $1,200 per month in rental income. The record supports the implicit finding that Husband has the ability to pay the $1,000 per month alimony ordered by the Chancellor.

We must determine whether Wife's rehabilitation is feasible in consideration of all relevant statutory factors. The Chancellor found as follows in this regard:

> It is clear that Dr. Ridgeway is not enjoying anything near the standard of living she enjoyed during the course of this marriage. Furthermore, given her current illness and the unlikelihood that she will ever be able to increase her current earnings, she is not likely to ever a achieve a standard of living remotely close to that which she enjoyed during the marriage. . .Given the ages and potential earning capacities of the parties and their potential for acquiring assets in the future and giving consideration to the fact that Dr. Ridgeway has been essentially forced from this marriage through no fault of her own the Court is of the opinion that this is an appropriate case for alimony <u>in futuro</u> and orders that alimony [is] to be set in the amount of $1000 per month.

We agree that rehabilitation of the Wife is not feasible under the facts of this case. At the time of trial, Wife was nearly fifty-six years old. She has reached the pinnacle of educational training for her career, but due to the effects of fibromyalgia, she is physically unable to work full time. Our review of the other relevant statutory factors, as discussed above, also supports this conclusion.

Husband argues on appeal that the award of alimony *in futuro* "serves to punish the [Husband] rather than to assist the [Wife]." He asserts that the Chancellor inappropriately placed

greater weight on T.C.A. 36-5-101(d)(1)(K), the "relative fault of the parties" factor.  Alimony has never been intended by our legislature to be punitive, nor is it intended to be an award for virtue.  *Lancaster v. Lancaster*, 671 S.W.2d 501 (Tenn.Ct.App. 1984); *Gaskins v. Gaskins*, an unreported opinion of this Court filed in Knoxville on November 29, 2001.  However, the plain language of the statute authorizes a trial court to consider, in accordance with the other statutory factors, the relative fault of the parties.

Regarding this factor, the Chancellor found that the Husband had been involved in an extramarital affair for over fifteen years.  He introduced his paramour into the family as a close friend and the parties' child came to refer to her as an "aunt."  Husband admitted that on at least one occasion, he falsely told his Wife that his relationship with the other individual was not sexual.  The revelation of the truth of this matter was a precipitous factor in ending the parties' marriage of some twenty-two years.  We have carefully reviewed the Chancellor's judgment in this case, and find that he did not give undue weight to the relative fault of the parties.  We believe his order of *in futuro* alimony in this case was not an attempt to punish Husband, but rather was based on a review of all the relevant statutory factors and a finding of legitimate need on Wife's part.

For the foregoing reasons the judgment of the Chancellor is affirmed and the cause remanded for collection of costs below.  Costs of appeal are adjudged against Dr. Jimmy Clarke Kimball and his surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE