# IN THE COURT OF APPEALS OF TENNESSEE,

## AT JACKSON

_____

|  |  |  |
|---|---|---|
| **KATHERYN LAKE GRIFFIN**, | ) | Shelby County Chancery Court |
|  | ) | No. 027195-3 R.D. |
| Plaintiff/Appellant, | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9807-CH-00177 |
|  | ) |  |
| **STEVEN MARSHALL GRIFFIN**, | ) |  |
|  | ) |  |
| Defendant/Appellee. | ) |  |
|  | ) |  |

# FILED

**October 30, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

From the Chancery Court of Shelby County at Memphis.
**Honorable D. J. Alissandratos, Chancellor**

**Richard F. Vaughn**, Memphis, Tennessee
Attorney for Plaintiff/Appellant.

**Theresa H. Patterson**, Memphis, Tennessee
Attorney for Defendant/Appellee.

OPINION FILED:

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**

**FARMER, J.**

**HIGHERS, J.** (Concurs)

**TATUM, Sr. J.** (Concurs)

In this dispute between Katheryn Lake Griffin ("Wife") and Steven Marshall Griffin (" Husband"), Wife appeals from an order of the trial court (1) granting a divorce to both parties, (2) dividing the parties' marital property, (3) refusing Wife's request for alimony, and (4) refusing Wife's request for attorney's fees and litigation expenses. For the reasons set forth below, we affirm in part, reverse in part, and remand the cause to the trial court for further proceedings consistent with this opinion.

### Factual and Procedural History

The parties were married in July of 1973 when both were eighteen years of age. Two children were born during the marriage, both of whom had reached the age of majority at the time of trial. After nearly twenty-three years of marriage, the parties separated in April of 1996.

Prior to the parties' marriage, Husband had obtained a private pilot's license. During the early years of the marriage, he earned a degree in accounting and subsequently joined the Air Force. After his retirement from the Air Force, Husband held a series of positions with small airlines and freight carriers until he was able to attain enough flight hours to qualify for a position with a major airline. In

1986, Husband obtained a position with Republic Airlines, which was subsequently acquired by Northwest Airlines. At the time of trial, Husband was employed as a DC-9 captain by Northwest Airlines earning a gross salary of $129,444.00 per year.

Wife did not attain a degree during the parties' marriage but instead stayed at home with the children. Wife also earned money for the family during this period by performing various sewing-related jobs at home. Wife attempted at some point during the marriage to obtain a degree in fashion design but did not finish the required course work. In 1994, Wife obtained a real estate license and began working for Re/Max Great Properties, grossing $9,677.95 in 1994, $82,437.00 in 1995, and $45,706.95 in 1996.[1] After being diagnosed with breast cancer in April of 1996, however, Wife became physically unable to show houses for Re/Max Great Properties.[2] In October of 1997, Wife became associated with Crye-Leike Realtors as an agent. Sometime thereafter, she became mentally and physically unable to sell real estate.[3] At the time of trial, she was working part-time at Goldsmith's department store grossing approximately $439.00 per month. Additionally, however, Wife had been admitted to the University of Memphis and was interested in obtaining a degree in sales management.

In May of 1996, Wife filed a complaint seeking a divorce from Husband on the grounds of irreconcilable differences and requesting that the trial court award her alimony, attorney's fees, and litigation expenses *pendente lite*. Husband subsequently filed an answer and counter-complaint, alleging both irreconcilable differences and inappropriate marital conduct as grounds for divorce. After a hearing before a divorce referee regarding Wife's motion *pendente lite*, the trial court entered an order allowing Wife to use funds advanced on Husband's Mastercard account to pay for medical-related expenses and for parking fees of up to $100.00 per month. Wife later amended her original complaint to allege inappropriate marital conduct as additional grounds for divorce. During a hearing on Wife's complaint and Husband's counter-complaint, the parties stipulated as to grounds for divorce. At the conclusion of this hearing, the trial court (1) noted the parties' stipulation as to grounds, (2) found that

the parties were equally at fault,[4] (3) divided the parties' marital property and allocated the parties' marital debt, (4) ruled that neither party was entitled to alimony of any kind, and (5) concluded that both parties should bear the costs of their own attorney's fees. The trial court subsequently entered a final decree of divorce incorporating this ruling. Husband filed a motion to alter or amend the judgment pursuant to Rule 60 of the Tennessee Rules of Civil Procedure. After a hearing on the matter, the trial court denied Husband's motion. This appeal by Wife followed.

### *Issues and Standard of Review*

The issues raised on appeal, as stated by Wife, are as follows:

I. Whether the trial court erred in failing to award the plaintiff alimony *in futuro* and rehabilitative alimony?

II. Whether the trial court erred in failing to consider marital assets dissipated by the husband?

III. Whether the trial court erred in the division of marital property?

IV. Whether the trial court erred in failing to award the plaintiff attorney'

s fees and litigation expenses?

To the extent that these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. *See* T.R.A.P. 13(d). Accordingly, we may not reverse these findings unless they are contrary to the preponderance of the evidence. *See, e.g., Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996); T.R.A.P. 13(d). With respect to the trial court's legal conclusions, however, our review is *de novo* with no presumption of correctness. *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); T.R.A.P. 13(d).

### *Division of Marital Property*

Wife argues on appeal that the trial court erred in failing to consider certain assets dissipated by Husband when dividing the parties' marital property. Additionally, Wife contends that the division of marital property ordered by the trial court is not equitable. With respect to the parties' marital assets, the trial court awarded to Wife the parties' Merrill Lynch IRA and 1990 Cadillac Sedan while Husband was awarded the parties' Gibson houseboat, ski boat, and 1989 Toyota 4-Runner.[5] The court further ordered that the parties' home, their most valuable marital asset, be sold and that the net proceeds of the sale be distributed sixty percent to Wife and forty percent to Husband. Finally, the court divided Husband's 401K retirement account and his qualified and non-qualified stock in Northwest Airlines equally between the parties.[6] With respect to the parties' household assets, Husband received all items that he requested and Wife received the remainder of the household items.[7]

Wife argued at trial that, after the parties' separation but prior to trial, Husband dissipated certain marital assets and that, accordingly, the court should consider the dissipation of these assets when making an equitable distribution of the parties' marital property. Specifically, Wife argued that Husband dissipated the parties' marital assets by (1) withdrawing $10,000.00 from his 401K retirement account, (2) selling 316 shares of Northwest Airlines qualified stock valued at $14,683.26, and (3) selling another 460 shares of Northwest Airlines qualified stock valued at $22,689.41. The trial court disagreed, stating simply that Wife's proof of dissipation was not persuasive.

There is ample evidence in the record explaining the aforementioned transactions and accounting for the proceeds derived from Husband's 401K withdrawal and stock sales. First, of the $10,000.00 withdrawn from Husband's 401K account, $7,500.00 was used to pay Husband's 1996 income taxes, a portion of which accrued prior to the parties' separation. We think that this is an appropriate use of the parties' marital assets. Husband also sold 316 shares of stock valued at $14,683.26. After withholding twenty percent of the proceeds from this sale for penalties and federal taxes, Husband ultimately received $11,745.61, the majority of which was used to pay off a $10,000.00

cash advance taken by Wife on Husband's Mastercard account pursuant to the trial court's order on Wife's motion *pendente lite*. In this order, the trial court did not direct Husband to use his separate property to pay the balance of his Mastercard account. Rather, the court simply stated that Husband " shall pay the credit card debt . . . as it becomes due each month." We cannot fault Husband for using marital assets to satisfy this obligation. Finally, Husband received $22,689.41 in net proceeds from the sale of 460 shares of stock and placed $20,000.00 of these proceeds in his attorney's escrow account. At the time of trial, approximately $3,000.00 remained in this account. With respect to these remaining funds, the following exchange took place between the trial court and counsel for Husband:

The Court:    Did you already remove that money from your escrow account and applied it towards your fee?

Counsel:    Yes, sir.

The Court:    Okay. Is any of it left in the escrow?

Counsel:    About $3,000.

The Court:    All right. We'll divide what's left in the escrow account.

Because if the horses are already out of the barn, there's

nothing we can do about that; but if the horses are still in

the barn, then I intend on treating that as a marital asset.

Thus, although the court disapproved of Husband's use of marital assets to pay his attorney's fees, it was apparently under the assumption that the funds removed from the attorney's escrow account could not be "corralled back into the barn." In ruling that "each of the parties shall bear the costs of their own attorney's fees," it is presumed that the trial court intended for the parties to satisfy their attorneys' fees using either separate property or assets awarded to them under their final decree of divorce. By allowing Husband to use the aforementioned stock proceeds to pay his attorney's fees, the trial court effectively made these fees an obligation of both Wife and Husband. In light of the court's ruling that

each party should bear the cost of his or her own attorney's fees, we think that this was improper. Thus, we agree that the trial court erred in refusing to consider Husband's dissipation of these proceeds when making an equitable distribution of the parties' marital property. Accordingly, the trial court's ruling with respect to this matter is reversed.[8]

As stated above, Wife also contends on appeal that the trial court failed to make an equitable distribution of the parties' marital property. When dividing marital property upon divorce, the trial court must consider all relevant factors, including those set forth in section 36-4-121 of the Tennessee Code Annotated. *See* Tenn. Code Ann. § 36-4-121(c) (1996).[9] Although the distribution must be equitable, the court is not required to divide the parties' marital property equally. *See Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Watters v. Watters*, 959 S.W.2d 585, 591 (Tenn. App. 1997); *Bookout v. Bookout*, 954 S.W.2d 730, 732 (Tenn. App. 1997). The equity or inequity of a court's distribution of marital property is determined by examining the final result of the court's ruling rather than the division of any particular piece or category of marital property. *See Watters*, 959 S.W.2d at 591; *Bookout*, 954 S.W.2d at 732; *Wade v. Wade*, 897 S.W.2d 702, 717 (Tenn. App. 1994); *Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. App. 1990). Additionally, we note that trial courts are afforded a great deal of discretion when dividing marital property. *See Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983); *Bookout*, 954 S.W.2d at 732; *Wade*, 897 S.W.2d at 715; *Koch v. Koch*, 874 S.W.2d 571, 579 (Tenn. App. 1993); *Loyd v. Loyd*, 860 S.W.2d 409, 411 (Tenn. App. 1993). Consistent with this general rule, the distribution of marital property made by the trial court in the instant case is entitled to a presumption of correctness and may not be reversed unless it is contrary to the preponderance of the evidence. *See Wade*, 897 S.W.2d at 715; *Loyd*, 860 S.W.2d at 411; *Barnhill v. Barnhill*, 826 S.W.2d 443, 450 (Tenn. App. 1991); T.R.A.P. 13(d).

In ruling on Wife's request for alimony, the trial court carefully considered and made specific findings regarding many of the same factors as those set forth in section 36-4-121. Wife was

awarded approximately one-half of the parties' marital assets.[10]  Additionally, as noted by the trial court, Husband was ordered to assume a greater percentage of the parties' marital debt.  After reviewing the entire record in the case at bar, we conclude that the evidence does not preponderate against the trial court's distribution of the parties' marital property.  Thus, with respect to this matter, the trial court's ruling is affirmed.

### *Alimony*

At trial, Wife requested both rehabilitative alimony and alimony *in futuro*.  In ruling on these requests, the trial court discussed each of the factors set forth in section 36-5-101of the Tennessee Code Annotated,[11] ultimately concluding that "it does not find from the totality of the proof that it is a case for consideration of alimony of any sort when the Court applies the law to alimony considering all the factors that the Court must consider and has considered about the statute, considering the strong evidence in this matter as to the abilities of the parties, the assets that they have, and the way the Court will be dividing the assets."  On appeal, Wife challenges this portion of the trial court's ruling.

As an initial matter, we note that a trial court has broad discretion to determine whether alimony is appropriate and, if so, the nature, amount, and duration of the alimony awarded.  *See Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. App. 1998)(citing *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. App. 1996); *Jones v. Jones*, 784 S.W.2d 349, 352 (Tenn. App. 1989)).  There are no hard and fast rules to be applied in cases involving a request for alimony.  *See id.* (citing *Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. App. 1996); *Stone v. Stone*, 409 S.W.2d 388, 392-93 (Tenn. App. 1966)).  Rather, decisions regarding alimony hinge on the unique facts of the case and involve the careful consideration and balancing of the factors set forth in section 36-5-101.  *See id.* at 683 (citing *Hawkins v. Hawkins*, 883 S.W.2d 622, 625 (Tenn. App. 1994); *Loyd*, 860 S.W.2d at 412).  Accordingly, appellate courts are reluctant to second guess a trial court's decision regarding

alimony and will not disturb such a decision unless it is unsupported by the evidence or contrary to the public policies set forth in applicable Tennessee statutes. *See id.* at 382 (citing ***Brown v. Brown***, 913 S.W.2d 163, 169 (Tenn. App. 1994); ***Ingram v. Ingram***, 721 S.W.2d 262, 264 (Tenn. App. 1986)).

We first address whether the trial court erred in denying Wife's request for rehabilitative alimony. In Tennessee, there is a statutory preference for temporary, rehabilitative alimony when an economically disadvantaged spouse is in need of support. *See* Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 1998). The purpose of rehabilitative alimony is to enable an economically disadvantaged spouse to become more self-sufficient by acquiring additional job skills, education, or training. *See Anderton*, 988 S.W.2d at 682 (citing ***Smith v. Smith***, 912 S.W.2d 155, 160 (Tenn. App. 1995); ***Cranford v. Cranford***, 772 S.W.2d 48, 51 (Tenn. App. 1989)). In the instant case, Wife contends that she is unable to make a living as a real estate because (1) she has been diagnosed with and treated for breast cancer, (2) she suffers from and takes prescription medication for depression, (3) she no longer has her contacts at Husband's place of employment, and (4) she would not have adequate retirement or health benefits as a real estate agent. Additionally, Wife has expressed a desire to attend the University of Memphis and obtain a degree in sales management. With respect to Wife's earning capacity, the trial court found as follows:

> [T]he Court finds, specifically, that the wife has a substantial earning capacity; that she has deprived herself of - - for reasons that the Court cannot accept as medically justifiable. The Court finds that she is grossly underemployed and has the ability to earn considerably more than that which she does earn. The Court particularly notes that one of her own witnesses testified, Ms. Lubiani - -
>
> . . . .
>
> . . . that she had a bright future, a rising star, and the Court agrees with that. And also, the Court finds that even the other witness that testified - - no, that was it.
>
> The Court finds that - - so in accordance with the statute, applying criteria, "A," the Court does not find that that mitigates in favor of an

alimony award.

> In looking at "B," the relative education and training, the Court finds that while the wife is not well-educated in terms of an advanced degree, the Court will find that she is well-educated in terms of that purpose of the education at this juncture, which is to earn a living. For after all, part of the - - the other part of that is to prove such parties earning capacity to a reasonable level, and the Court finds that she has that.

The evidence in the record support's this finding. Jeanine Lubiani, who served as Wife's manager at Crye-Leike Realtors, testified that the real estate business is a rewarding but stressful profession and is not very physically demanding. We doubt that the physical and mental demands of the real estate business are significantly greater than those experienced by a person pursuing a career in sales management. Additionally, Ms. Lubiani expressed her opinion that, based on Wife's gross sales during her first year of real estate sales, Wife has a bright future as a real estate agent. We disagree with Wife's contention that, because she lost her contacts with Husband's employer, she no longer has a future as a real estate agent. Not all of Wife's real estate contacts were acquired through Husband. Rather, she also acquired contacts through friends, family, and Mr. Martin, with whom she continues to have a romantic relationship. Finally, with respect to the issue of retirement and health benefits, there is evidence in the record that Crye-Leike Realtors recently began offering its agents health insurance. Additionally, the record does not indicate that Wife is unable to obtain private health insurance. Thus, like the trial court, we conclude that Wife has the ability to earn a living as a real estate agent and that there is no need for rehabilitation in the case at bar. Accordingly, we affirm the trial court's denial of Wife's request for rehabilitative alimony.

We next address whether the trial court erred in denying Wife's request for alimony *in futuro*. The purpose of alimony *in futuro* is to provide support to an economically disadvantaged spouse who is unable to become self-sufficient through rehabilitation. *See Anderton*, 988 S.W.2d at 682 (citing *Loria v. Loria*, 952 S.W.2d 836, 838 (Tenn. App. 1997)). As stated above, we think that

Wife currently has the ability to earn a living as a real estate agent and thus has the potential to achieve self-sufficiency. We are concerned, however, that Wife may at some point in the future become unable to earn a living. At the time of trial, Wife's cancer was in remission. Wife testified, however, that there is a chance that her cancer may recur. Dr. Kirby L. Smith, Wife's treating physician, testified that although the likelihood of imminent recurrence is not great, this likelihood will increase over the next few years. Dr. Smith further testified that Wife's particular type of cancer has the potential to recur within anywhere from a few years to more than ten years. In the event that Wife's cancer recurs, Wife's earning capacity will undoubtedly be affected and she is likely to incur significant medical expenses. Under such circumstances, we think Wife is entitled to at least a nominal award of alimony *in futuro* which, in the event of a substantial and material change of circumstances such as the recurrence of Wife's cancer, may be modified to reflect the changed positions of the parties. *See* Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 1998). We find that an appropriate amount of alimony *in futuro* in the instant case is $100.00 per month. Thus, the trial court's denial of Wife's request for alimony *in futuro* is reversed and the court is instructed to enter an order on remand awarding Wife $100.00 per month as alimony *in futuro*.

### *Attorney's Fees and Litigation Expenses*

Finally, Wife contends that the trial court erred in failing to order Husband to pay her attorney's fees and litigation expenses. In the context of divorce, an award of attorney fees is treated as alimony. *See Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. App. 1988). The question of whether to award attorney fees in such cases, and the amount thereof, are largely left within the discretion of the trial court and will not be disturbed on appeal unless the trial court's ruling is contrary to the preponderance of the evidence. *See Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. App. 1992)(citing *Batson v. Batson*, 769 S.W.2d 849, 862 (Tenn. App. 1988); *Lyon*, 765 S.W.2d at 762-63). In determining whether to award attorney's fees, the trial court is required to consider the

same factors used when considering a spouse's request for alimony. *See id.*; Tenn. Code Ann. §

36-5-101(d)(1) (Supp. 1998). Accordingly, among other factors, the court must consider "[t]he

provision made with regard to the marital property as defined in § 36-4-121." Tenn. Code Ann. §

36-5-101(d)(1)(H) (Supp. 1998). In the case at bar, Wife was awarded marital property valued at

more than $177,000.00. Included in this award is Wife's right to receive sixty percent of the proceeds

from the sale of the parties' residence which, according to Wife, has an equity of $106,000.00.

Because we find that Wife's portion of these proceeds is a sufficient award from which to pay her

attorney's fees, we conclude that the trial court's denial of her request for attorney's fees is not contrary

to the preponderance of the evidence.

Wife's request for litigation expenses is governed by Rule 54.04 of the Tennessee Rules

of Civil Procedure, which provides in pertinent part as follows:

> (2) Costs not included in the bill of costs prepared by the clerk are
>
> allowable only in the court's discretion. Discretionary costs allowable
>
> are: reasonable and necessary court reporter expenses for depositions
>
> or trials, reasonable and necessary expert witness fees for depositions or
>
> trials, and guardian ad litem fees; travel expenses are not allowable as
>
> discretionary costs.

T.R.C.P. 54.04(2). Trial courts are generally afforded a great deal of discretion when considering

whether to award costs. Accordingly, absent a clear abuse of discretion, a trial court's decision

regarding this matter will not be altered on appeal. *See, e.g., Perdue v. Green Branch Mining Co.,*

837 S.W.2d 56, 60 (Tenn. 1992). Because we do not think that the trial court abused its discretion, we

conclude that the court did not err in failing to order Husband to pay Wife's litigation expenses.

We therefore affirm the trial court's denial of Wife's request for attorney's fees and litigation expenses.

### *Conclusion*

Based on the foregoing, we hold (1) that, with the exception of the stock proceeds used by Husband to pay his attorney's fees, the trial court did not err in refusing to consider certain assets dissipated by Husband when dividing the parties' marital property, (2) that the trial court's division of the parties' marital property is equitable, (3) that the trial court did not err in refusing to award Wife rehabilitative alimony, (4) that the trial court did err in refusing to award Wife alimony *in futuro*, and (5) that the trial court did not err in refusing Wife's request for attorney's fees and litigation expenses. Accordingly, the ruling of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. On remand, the trial court is instructed to enter an order requiring Husband to pay to Wife one-half of the amount paid to his attorney with stock proceeds and awarding Wife alimony *in futuro* in the amount of $100.00 per month. The costs of this appeal are taxed one-half to Wife and one-half to Husband, for which execution may issue if necessary.

_____

                                     FARMER, J.

_____

HIGHERS, J.

_____

TATUM, Sr. J.