**FILED**

**December 30, 1999**

~~Cecil Crowson, Jr.~~
**Cecil Crowson, Jr.**
**Appellate Court Clerk**


**IN THE COURT OF APPEALS OF TENNESSEE,**
**AT JACKSON**

_____

|  |  |  |
|---|---|---|
| | ) | |
| **WILLIAM BRADLEY KINCAID, III**, | ) | Davidson County Circuit Court |
| | ) | No. 97D-2432 |
| Plaintiff/Appellant, | ) | |
| | ) | |
| VS. | ) | C.A. No. M1998-00529-COA-R3-CV |
| | ) | |
| **KATHY JO KEMMER KINCAID**, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |
| | ) | |

_____

From the Circuit Court of Davidson County at Nashville.
**Honorable Muriel Robinson, Judge**


**Jeffrey L. Levy**, Nashville, Tennessee
Attorney for Plaintiff/Appellant


**Helen Sfikas Rogers**, Nashville, Tennessee
**Lana L. Lennington**, Nashville, Tennessee
Attorneys for Defendant/Appellee


OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**


**HIGHERS, J.**: (Concurs)
**KOCH, J.**: (Concurs)


In this action brought by Plaintiff William Bradley Kincaid, III against Defendant

Kathy Jo Kemmer (formerly Kathy Jo Kemmer Kincaid), the trial court granted an absolute divorce to Ms. Kemmer, divided the parties' marital property, allocated the parties' marital debt, and awarded alimony and attorney's fees to Ms. Kemmer. On appeal, Mr. Kincaid challenges the trial court's ruling with respect to the parties' marital property and debts, alimony, and attorney's fees. On cross-appeal, Ms. Kemmer argues that the trial court should have ordered Mr. Kincaid to pay a greater amount of her attorney's fees. For the reasons set forth below, we affirm the ruling of the trial court.

*Factual and Procedural History*

The parties married in October of 1988 and separated in August of 1997. There were no children born during the marriage. Mr. Kincaid felt strongly that he wanted to have children. Although Ms. Kemmer did not refuse to have children, she wanted to wait until the parties had been married for a few years before even considering the possibility of children. In 1990, the parties purchased and began remodeling a house, investing money from Ms. Kemmer's premarital individual retirement account and money that Ms. Kemmer had inherited from her grandfather. Although the parties worked on the remodeling project together, Mr. Kincaid performed the majority of the remodeling work.

The parties disagree regarding the reasons for the decline in their relationship. Mr. Kincaid contends that the conflict in the parties' marriage was due to Ms. Kemmer's declining interest in sexual relations and her unwillingness to have children. Additionally, Mr. Kincaid notes that Ms. Kemmer joined a Baptist church in 1995 and argues that her frequent involvement in church activities had an adverse effect on the marriage. Ms. Kemmer, however, argues that the parties' marital problems were due to Mr. Kincaid's unwillingness to be intimate with or affectionate towards her except during sexual relations. She further contends that Mr. Kincaid began staying out all night and entered into an adulterous relationship that resulted in the birth of a child out of wedlock. Finally, Ms. Kemmer notes that the parties experienced frequent disagreements regarding the handling of financial matters.

In August of 1997, Mr. Kincaid filed a complaint against Ms. Kemmer seeking an

absolute divorce on the grounds of irreconcilable differences and inappropriate marital conduct. Ms. Kemmer subsequently filed an answer and counter-complaint for divorce, denying that she had engaged in inappropriate marital conduct, admitting that irreconcilable differences had arisen between the parties, and alleging that Mr. Kincaid was guilty of inappropriate marital conduct. After a hearing on the matter, the trial court found that, although both of the parties were at fault to some degree, Mr. Kincaid was more at fault than Ms. Kemmer. The court then (1) granted an absolute divorce to Ms. Kemmer on the grounds of inappropriate marital conduct and adultery, (2) awarded each party his or her own personal property, retirement plans, and bank accounts, (3) ordered Mr. Kincaid to pay all of the parties' credit card debt, (4) awarded the marital home to Ms. Kemmer, designating that Mr. Kincaid's equity in the home was awarded to Ms. Kemmer as alimony *in solido*, (5) ordered Mr. Kincaid to pay Ms. Kemmer $400.00 per month for twenty-four months as alimony *in futuro*,[1] and (6) ordered Mr. Kincaid to pay court costs and $1,500.00 of Ms. Kemmer's attorney's fees. A final decree of divorce reciting the trial court's ruling was entered on November 16, 1998. This appeal followed.

### *Issues and Standard of Review*

The issues raised on appeal, as we perceive them, are as follows:

I. Did the trial court err with respect to its division of the parties' marital property?

II. Did the trial court err in ordering Mr. Kincaid to pay all of the parties' credit card debt?

III. Did the trial court err in awarding Mr. Kincaid's equity in the marital home to Ms. Kemmer as alimony *in solido* and in awarding Ms. Kemmer $400.00 per month for twenty-four months as alimony *in futuro*?

IV. Did the trial court err in ordering Mr. Kincaid to pay $1,500.00 of Ms. Kemmer's attorney's fees?

---

[1]When making this ruling, the trial court specifically noted that "there is a need for [Ms. Kemmer] to rehabilitate herself." An award of alimony *in futuro*, as opposed to rehabilitative alimony, is appropriate when one spouse is economically disadvantaged compared to the other spouse and rehabilitation of the disadvantaged spouse is not feasible. *See, e.g., Young v. Young*, 971 S.W.2d 386, 391 (Tenn. Ct. App. 1997); Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 1999). In the instant case, the trial court found that Ms. Kemmer was in need of and presumably was capable of rehabilitation. Thus, although the court purported to award alimony *in futuro* to Ms. Kemmer, we think that the award is more accurately one of rehabilitative alimony.

To the extent that these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. *See* T.R.A.P. 13(d). We may not reverse these findings unless they are contrary to the preponderance of the evidence. *See, e.g., Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996); T.R.A.P. 13(d). With respect to the trial court's legal conclusions, however, our review is *de novo* with no presumption of correctness. *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); T.R.A.P. 13(d).

### *Marital Property*

The trial court's ruling with respect to the division of marital property in the case at bar is as follows:

> Insofar as division of property, the property listed on Exhibit No. 5 will be awarded to her. That's plaintiff's exhibit. There was no objection. The items listed on Exhibit No. 4 will be awarded to him. There was no objection in that regard. He'll be awarded his retirement. She's to be awarded her retirement. Each of the parties will keep their own savings and bank accounts. Each of the parties will keep the furniture and furnishings now in their possession. . . .
>
> . . . .
>
> . . . The home place will be awarded to the wife subject to the mortgage. His one-half of the equity will be awarded to her as alimony in solido due to the disparaging condition of her ability to earn income. . . .
>
> Each of the parties will keep their own automobile.

Exhibit #5 is a list of personal property, including Ms. Kemmer's 1989 Mercedes automobile. Mr. Kincaid valued these items at $14,369.00. Exhibit #4 is a list of personal property, including Mr. Kincaid's 1984 Chevrolet truck. According to Mr. Kincaid, the value of these items is $19,511.00. Also included in Exhibit #4 is a list of building supplies valued by Mr. Kincaid at $1,545.00. According to Mr. Kincaid, the value of Ms. Kemmer's retirement account is $23,604.00 and the value of his retirement account is $18,000.00. There is no evidence in the record indicating the values of the parties' individual bank accounts. The parties both agree that the fair market value of

their marital residence is $84,000.00. Mr. Kincaid stated, however, that the parties' equity in the marital residence is only $39,955.00. Assuming that the values suggested by Mr. Kincaid in his Court of Appeals Rule 15 statement are correct, Mr. Kincaid was awarded marital property having a net value of $59,033.50 while Ms. Kemmer was awarded marital property having a net value of $57,950.50.[2] Thus, the trial court awarded 50.5% of the parties' marital property to Mr. Kincaid and 49.5% of this property to Ms. Kemmer.

When dividing marital property upon divorce, the trial court must consider all relevant factors, including those set forth in section 36-4-121 of the Tennessee Code Annotated.[3] *See* Tenn. Code Ann. § 36-4-121(c) (1996). These factors are as follows:

> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisition of capital assets and income;
> (5) The contribution of each party to the acquisition,

---

[2]Our calculations are summarized as follows:

| Property Awarded to Ms. Kemmer | Value |
| --- | --- |
| Personal Property (Including Car) | 14,369.00 |
| Ms. Kemmer's Retirement Account | 23,604.00 |
| Ms. Kemmer's Savings/Bank Accounts | (unknown) |
| Furniture in Ms. Kemmer's Possession | (unknown) |
| ½ Equity in Marital Residence | 19,977.50 |
| **Total:** | $57,950.50 |

| Property Awarded to Mr. Kincaid | Value |
| --- | --- |
| Personal Property (Including Truck) | 19,511.00 |
| Building Supplies | 1,545.00 |
| Mr. Kincaid's Retirement Account | 18,000.00 |
| Mr. Kincaid's Savings/Bank Accounts | (unknown) |
| Furniture in Mr. Kincaid's Possession | (unknown) |
| ½ Equity in Marital Residence | 19,977.50 |
| **Total:** | $59,033.50 |

[3]This statute specifically provides, however, that the relative fault of the parties is not among the factors that the court may consider when making an equitable division of the parties' marital property. *See* Tenn. Code Ann. § 36-4-121(a)(1) (1996). *See also Fisher v. Fisher*, 648 S.W.2d 244, 246-47 (Tenn. 1983); *Wilder v. Wilder*, 863 S.W.2d 707, 715 (Tenn. Ct. App. 1992).

preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

> (6) The value of the separate property of each party;
> (7) The estate of each party at the time of the marriage;
> (8) The economic circumstances of each party at the time the division of property is to become effective;
> (9) The tax consequences to each party; and
> (10) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (1996). Although the trial court's distribution of the parties' marital property must be equitable, the court is not required to divide the parties' marital property equally. *See Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Watters v. Watters*, 959 S.W.2d 585, 591 (Tenn. Ct. App. 1997); *Bookout v. Bookout*, 954 S.W.2d 730, 732 (Tenn. Ct. App. 1997). The equity or inequity of a court's distribution of marital property is determined by examining the final result of the court's ruling rather than the division of any particular piece or category of marital property. *See Watters*, 959 S.W.2d at 591; *Bookout*, 954 S.W.2d at 732; *Wade v. Wade*, 897 S.W.2d 702, 717 (Tenn. Ct. App. 1994); *Thomson v. Thomson*, 797 S.W.2d 599, 604 (Tenn. Ct. App. 1990). Additionally, we note that trial courts are afforded a great deal of discretion when dividing marital property. *See Fisher*, 648 S.W.2d at 246; *Bookout*, 954 S.W.2d at 732; *Wade*, 897 S.W.2d at 715; *Koch v. Koch*, 874 S.W.2d 571, 579 (Tenn. Ct. App. 1993); *Loyd v. Loyd*, 860 S.W.2d 409, 411 (Tenn. Ct. App. 1993). Consistent with this general principle, the distribution of marital property made by the trial court in the instant case is entitled to a presumption of correctness and may not be reversed unless it is contrary to the preponderance of the evidence. *See, e.g., Dellinger v. Dellinger*, 958 S.W.2d 778, 780 (Tenn. Ct. App. 1997)(citing *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); *Dalton v. Dalton*, 858 S.W.2d 324, 327 (Tenn. Ct. App. 1993)); T.R.A.P. 13(d).

On appeal, Mr. Kincaid argues that the trial court's division of the parties' marital property is inequitable. Upon consideration of the factors listed in section 36-4-121(c), we cannot agree. The parties were married for approximately ten years. At the time of their divorce, Mr. Kincaid was forty years of age while Ms. Kemmer was thirty-nine years of age. Prior to the parties' marriage, Mr. Kincaid completed two years of college while Ms. Kemmer completed one year of

college.  Thus, the parties have achieved similar levels of education.  Throughout their marriage, however, Mr. Kincaid earned significantly more money than Ms. Kemmer.  At the time of their divorce, Mr. Kincaid was employed as a manager by AAA Communications Company and earned a gross salary of $3,698.50 per month while Ms. Kemmer was employed as a secretary/clerical worker by Gambro Healthcare and earned only $10.00 per hour.  Thus, it appears that Mr. Kincaid has a greater ability to earn income and acquire assets in the future.  Finally, both parties contributed to the acquisition and restoration of the marital home.[4]  Under these circumstances, we do not think that it is inequitable to award Ms. Kemmer 49.5% of the parties' marital assets while awarding Mr. Kincaid 50.5% of these assets.  Thus, the trial court's division of the parties' marital property is affirmed.

### *Marital Debt*

At the time of their divorce, the parties had accrued a total of $26,770.43 in credit card debt.  The trial court ordered Mr. Kincaid to pay all of this debt.  Additionally, the court ruled that Ms. Kemmer is responsible for the remaining indebtedness on the parties' home, which totaled $44,045.34.  On appeal, Mr. Kincaid argues that the trial court erred in charging him with all of the parties' credit card debt.  Specifically, Mr. Kincaid contends that the court's ruling is inequitable because both of the parties received the benefits of this debt.

Trial courts have the authority to apportion marital debts in the same way they divide marital assets.  *See Cutsinger v. Cutsinger*, 917 S.W.2d 238, 243 (Tenn. Ct. App. 1995)(citing *Mahaffey v. Mahaffey*, 775 S.W.2d 618, 623-24 (Tenn. Ct. App. 1989)).  When apportioning

---

[4]Ms. Kemmer used funds from her premarital retirement account and funds inherited from her grandfather when purchasing and remodeling this home.  Retirement benefits earned prior to marriage and property acquired by inheritance are both classified as separate rather than marital property.  *See* Tenn. Code Ann. § 36-4-121(b)(2) (1996).  However, under the doctrine of transmutation, when one spouse uses his or her separate property in a way that demonstrates an intention that it become marital property, there is a presumption that the spouse has made a gift to the marital estate.  *See Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn. Ct. App. 1988).  In the instant case, the deed to the marital home indicated that, when the house was purchased, it was placed in the names of both Mr. Kincaid and Ms. Kemmer.  Additionally, both Mr. Kincaid and Ms. Kemmer lived in and participated in the remodeling of the house.  Finally, there is no evidence in the record suggesting that the parties intended for Ms. Kemmer's monetary contributions to the parties' home remain her separate property.  We therefore find that any separate property that Ms. Kemmer invested in the house was, by way of transmutation, converted into marital property and thus became subject to division by a court upon divorce.

marital debt, a court must consider (1) which party incurred the debt and the reason for the debt, (2) which party received the benefits of the debt, and (3) which party is better able to assume the debt. *See Dellinger*, 958 S.W.2d at 782; *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996); *Houghland v. Houghland*, 844 S.W.2d 619, 624 (Tenn. Ct. App. 1992); *Mahaffey*, 775 S.W.2d at 624; *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989). When practicable, marital debts should be divided so that they follow the marital property with which they are associated. *See Mondelli*, 780 S.W.2d at 773. The court is not required, however, to divided the parties' marital debts in the same proportion as their marital assets. *See id.*

In the case at bar, $7,288.45 of the parties' credit card debt was incurred on cards that were in the names of and were used by both Mr. Kincaid and Ms. Kemmer. According to Mr. Kincaid, Ms. Kemmer used one of these cards to pay $1,500.00 of her attorney's fees. The remaining $19,481.98 of the parties' credit card debt was incurred on cards that were in Mr. Kincaid's name only and were never used by Ms. Kemmer. Mr. Kincaid testified at trial that the parties' charged approximately $1,500.00 on one of these cards to pay for a trip they took to San Diego. Thus, although Mr. Kincaid may have made these $1,500.00 in charges, Ms. Kemmer also received a benefit from them. Mr. Kincaid further testified that he made charges to these cards to pay for car repairs and building supplies to be used in the remodeling of the parties' house. Additionally, however, Ms. Kemmer testified that Mr. Kincaid used these cards to purchase items such as an air duct cleaner and model airplane oil with the intention of reselling the items for a profit. We note that, under the trial court's division of the parties' marital property, Mr. Kincaid received building supplies valued at $1,545.00, an air duct cleaner valued at $2,000.00, and twenty-nine cases of model airplane oil valued at $1,740.00. Thus, with respect to the debt incurred in purchasing these items, Ms. Kemmer did not receive a benefit. As noted above, Mr. Kincaid earned significantly more money than Ms. Kemmer throughout the parties' marriage. At the time of their divorce, Mr. Kincaid earned a gross salary of $3,698.50 per month while Ms. Kemmer earned only $10.00 per hour. Thus, Mr. Kincaid is better able to assume the parties' credit card debt than Ms. Kemmer. Under these circumstances, we do not think that the trial court erred in charging all of this debt to Mr. Kincaid. Accordingly, the court's ruling with respect to this matter is affirmed.

***Alimony***

Regarding Ms. Kemmer's request for alimony, the trial court ruled as follows:

> The home place will be awarded to the wife subject to the mortgage. His one-half of the equity will be awarded to her as alimony in solido due to the disparaging condition of her ability to earn income. . . .
>
> . . . Insofar as alimony in futuro is concerned, there is a need for her to rehabilitate herself. I'm going to order him to pay her the amount of $400 per month for a period of two years.

On appeal, Mr. Kincaid argues that Ms. Kemmer should not have been awarded either alimony *in solido* or alimony *in futuro*.

Trial courts have broad discretion to determine whether alimony is appropriate and, if so, the nature, amount, and duration of the alimony awarded. *See Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998)(citing *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996); *Jones v. Jones*, 784 S.W.2d 349, 352 (Tenn. Ct. App. 1989)). Accordingly, appellate courts are reluctant to second guess a trial court's decision regarding alimony and will not disturb such a decision unless it is unsupported by the evidence or contrary to the public policies set forth in applicable Tennessee statutes. *See id.* at 382 (citing *Brown v. Brown*, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994); *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986)).

There are no hard and fast rules to be applied in cases involving a request for alimony. *See id.* (citing *Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996); *Stone v. Stone*, 409 S.W.2d 388, 392-93 (Tenn. Ct. App. 1966)). Rather, decisions regarding alimony hinge on the unique facts of the case and involve the careful consideration and balancing of many factors, including those set forth in section 36-5-101(d)(1). *See id.* at 683 (citing *Hawkins v. Hawkins*, 883 S.W.2d 622, 625 (Tenn. Ct. App. 1994); *Loyd*, 860 S.W.2d at 412). These factors are as follows:

> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> (C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 1999). The most important factors that a court must consider when determining whether to award alimony are (1) the need of the spouse seeking support and (2) the ability of the other spouse to pay support. *See Young*, 971 S.W.2d at 391; *Watters*, 959 S.W.2d at 593; *Smith v. Smith*, 912 S.W.2d 155, 159 (Tenn. Ct. App. 1995).

At the time of their divorce, Mr. Kincaid was employed as a manager grossing $3,698.50 per month while Ms. Kemmer was employed as a secretary/clerical worker earning $10.00 per hour.[5] We note, however, that Mr. Kincaid's financial needs and obligations are greater than those of Ms. Kemmer as Mr. Kincaid was ordered to pay all of the parties' credit card debt and is currently supporting his new wife and their child. Before their marriage, Mr. Kincaid completed two years of college while Ms. Kemmer completed one year of college. Thus, the parties have achieved similar levels of education. According to Ms. Kemmer, she would become more valuable to her current employer and would earn a higher wage if she completed certain computer and Spanish language classes. The parties were married for approximately ten years. At the time of their divorce,

---

[5]Mr. Kincaid argues on appeal that Ms. Kemmer is underemployed. When the parties met, Ms. Kemmer was working for Harris Publishing as a telemarketer and earned between $24,000.00 and $26,000.00 per year. During the parties' marriage, she worked at J.C. Penney earning $12.00 per hour. As noted above, Ms. Kemmer was earning $10.00 per hour at the time of the parties' divorce. This is only $2.00 less than the hourly wage that Ms. Kemmer earned while working at J.C. Penney. Given Ms. Kemmer's education, training, and past work history, we do not think that she is underemployed and therefore reject Mr. Kincaid's contention to the contrary.

Mr. Kincaid was forty years of age while Ms. Kemmer was thirty-nine years of age. There is no evidence suggesting that either party is physically or mentally impaired. Neither party is a custodian of a child born of the marriage. Additionally, neither party appears to have a significant amount of separate property. The trial court awarded 50.5% of the parties' marital property to Mr. Kincaid and 49.5% of this property to Ms. Kemmer. It appears that the parties enjoyed a modest but comfortable standard of living during their marriage. All education and training received by the parties was achieved prior to their marriage. The trial court specifically found that, although both parties were at fault to some degree, Mr. Kincaid was more at fault than Ms. Kemmer. Finally, the record is silent regarding the tax consequences to the parties resulting from an award of alimony.

After consideration of the factors discussed above, we think that this is an appropriate case in which to award alimony. When dividing the parties' marital property, the trial court awarded Mr. Kincaid one-half of the equity in the marital residence. The court then divested Mr. Kincaid of this equity and awarded it to Ms. Kemmer as alimony *in solido*. Under the circumstances of the case at bar, particularly the relative earning capacities of the parties, we think that this portion of the court's ruling was proper. Thus, the court's ruling with respect to alimony *in solido* is affirmed.

The trial court also ordered Mr. Kincaid to pay Ms. Kemmer $400.00 per month for twenty-four months, noting that there is a need for Ms. Kemmer to rehabilitate herself. As noted above, we think that this amount is properly characterized as rehabilitative alimony rather than alimony *in futuro*. In Tennessee, there is a statutory preference for temporary, rehabilitative alimony when an economically disadvantaged spouse is in need of support. *See* Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 1999). The purpose of rehabilitative alimony is to enable an economically disadvantaged spouse to become more self-sufficient by acquiring additional job skills, education, or training. *See Anderton*, 988 S.W.2d at 682 (citing *Smith v. Smith*, 912 S.W.2d 155, 160 (Tenn. Ct. App. 1995); *Cranford v. Cranford*, 772 S.W.2d 48, 51 (Tenn. Ct. App. 1989)). Ms. Kemmer testified at trial that she would be more valuable to her present employer and would earn a higher wage if she completed certain computer and Spanish language classes. In light of this goal, we think that the amount and duration of the rehabilitative alimony awarded to Ms. Kemmer is appropriate. Accordingly, we affirm this portion of the trial court's ruling.

### *Attorney's Fees*

Finally, Mr. Kincaid argues that the trial court erred in ordering him to pay $1,500.00 of Ms. Kemmer's attorney fees. Ms. Kemmer, on the other hand, contends on appeal that the trial court should have ordered Mr. Kincaid to pay a greater amount of her attorney's fees.

In the context of divorce, an award of attorney fees is treated as an award of alimony. *See Long. v. Long*, 957 S.W.2d 825, 829 (Tenn. Ct. App. 1997); *Ford v. Ford*, 952 S.W.2d 824, 830 (Tenn. Ct. App. 1996); *Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988). Thus, when determining whether to award attorney's fees, the trial court is required to consider the same factors used when considering a request for alimony. *See Houghland*, 844 S.W.2d at 623; Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 1999). The question of whether to award attorney fees, and the amount thereof, are largely left within the discretion of the trial court and will not be disturbed on appeal unless the trial court abused its discretion. *See, e.g., Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995). After considering the factors set forth in section 36-5-101(d)(1), the need of Ms. Kemmer, and Mr. Kincaid's ability to pay, we do not think that the trial court abused its discretion in ordering Mr. Kincaid to pay $1,500.00 of Ms. Kemmer's attorney's fees. We therefore affirm the trial court's ruling with respect to this matter.

### *Conclusion*

Based on the foregoing, the ruling of the trial court is in all respects affirmed. Costs on appeal are charged to Mr. Kincaid, for which execution may issue if necessary.

_____
FARMER, J.


_____
HIGHERS, J.


_____
KOCH, J.