# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

## SANDRA DIANE MOORE v. DANNY MICHAEL MOORE

**An Appeal from the Chancery Court for Crockett County**
**No. 7229; The Honorable George R. Ellis, Chancellor**

---

**No. W1998-00379-COA-R3-CV - Decided June 1, 2000**

---

This appeal arises from an action for divorce filed by plaintiff-Wife in the Crockett County Chancery Court. Following defendant-Husband's answer and counter-complaint for divorce, the parties entered into a consent order for support and other relief. The court entered an order granting divorce and approving the parties' agreement. Subsequently, the court entered an order awarding Wife alimony in futuro and a significant amount of the marital assets. The court also found that stock in a corporation was a marital asset and included the stock in Husband's award of marital assets. Husband appeals both the award of alimony and the court's characterization of the corporation stock as a marital asset.

**Tenn.R.App.P. Rule 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed in Part, Reversed in Part and Remanded**

HIGHERS, J., delivered the opinion of the court, in which CRAWFORD, P.J., W.S., and FARMER, J., joined.

James F. Butler, SPRAGINS, BARNETT, COBB & BUTLER, Jackson, for Appellant, Danny Michael Moore

L. L. Harrell, Jr., HARRELL & HARRELL, Trenton, for Appellee, Sandra Diane Moore

## OPINION

Danny Michael Moore ("Husband") appeals from the trial court's award of alimony and division of marital assets in this divorce action. On appeal, Husband asserts that the trial court erred in awarding alimony in futuro to Sandra Diane Moore ("Wife"). In addition, Husband claims the trial court erred in including stock in a corporation as part of marital assets subject to equitable division. For the following reason, the decision of the trial court is affirmed in part and reversed in part and remanded.

## Facts and Procedural History

The parties had been married for approximately twenty-six years when Wife filed a divorce action on December 11, 1996, alleging inappropriate marital conduct and irreconcilable differences. Husband filed an answer and counter-complaint for divorce, alleging irreconcilable differences and inappropriate marital conduct by Wife. On January 10, 1997, the parties entered into a consent order for support and other relief.[1] Husband subsequently amended his counter-complaint to allege adultery by Wife. On September 8, 1997, the court entered an Interim Order Granting Divorce and Approving Agreement of parties.[2] On August 4, 1998, the court entered an order on the remaining issues.[3] Pursuant to this order, Wife was awarded alimony in futuro of one thousand dollars per month. In addition, Wife was awarded marital assets including the parties' residence, shop, and rental property. Husband's marital property award included stock in his business as well as another corporation. Husband appeals based on the facts as set forth below.

From all accounts, the parties' marriage was very turbulent. Both parties committed adultery and Husband was physically and verbally abusive to Wife and the parties' children.[4] For instance, Husband struck Wife with a chain, injuring her arm, and kicked the parties' daughter in the stomach. After Wife filed for divorce, Husband accosted her in her yard, spraying her with weed-killer and threatening her.

For the majority of the marriage, Wife was a homemaker, staying at home with the parties' four children. Wife has only a tenth grade education although she did earn a GED. Wife has worked intermittently throughout the course of the marriage. At various times Wife worked as a substitute teacher, a secretary, a restauranteur, and a convenience store clerk. At the present, Wife is earning minimum wage as a convenience store clerk. According to Wife, her monthly expenses at the time of divorce totaled around seventeen hundred dollars a month.

While married, Husband worked at several different jobs before forming a corporation known as Moore Pumps. Wife provided some of the start-up capital for this corporation, as well as working as a secretary there on occasion. At the time of the divorce, Husband was paid approximately two thousand five hundred dollars a month by Moore Pumps. Moore Pumps has assets of around thirty-five thousand dollars. In addition, the company generates about fourteen thousand dollars worth of income per month.

In 1994, Husband decided to form another corporation, known as T-MAC Metals, in order

---

[1] This agreement included provisions for temporary alimony and child support as well as providing for payment of outstanding bills.

[2] The Interim order adopted most of the provisions set forth in the parties' agreement of January 10, 1997. The order also granted the parties an absolute or "dual-fault" divorce pursuant to Tenn. Code Ann. § 36-4-129(b).

[3] The order entered on August 4, 1998, was the last in a series of orders clarifying the division of assets.

[4] At the time of the divorce and division of property all of the parties' children were adults.

to purchase scrap metal. The corporation was named after the parties adult children: Tonya, Michael, Anthony, and Clint. The children were named as shareholders, directors, and officers of the corporation. Each child owns twenty-five percent of the corporation. While the parties' provided initial capital of five thousand dollars secured by notes from the children, neither Husband nor Wife was listed on the corporate charter or corporate tax returns. In addition, neither Husband nor Wife received a profit or distribution from T-MAC.

T-MAC corporation bought a parcel of land inside Madison County that was to be used for Moore Pumps. According to Wife, she thought that the land was purchased by Moore Pumps. Wife testified that neither she nor children knew that T-MAC owned the property until the court proceedings. At trial, however, one of the parties' children testified that Wife was aware that T-MAC, rather than Moore Pumps, purchased the land. Although the current value of the land is disputed; estimates at trial put the value at between one hundred and fifteen and one hundred and twenty-five thousand dollars.

At trial, the ownership of T-MAC metals was hotly contested. According to Wife, T-MAC was essentially a straw-man corporation used by Husband to further the business of Moore Pumps. Wife testified that this was necessary because businesses would not sell the material to Moore Pumps because it was a competitor. Wife asked that T-MAC be classified as a marital asset subject to equitable division by the court. Husband testified that T-MAC was not a marital asset, but rather a distinct business entity owned by the parties' children.

By order entered on December 15, 1998, the court awarded Wife alimony in futuro of one thousand dollars a month. In addition, the court held that T-MAC was a marital asset and took its worth into consideration when dividing the assets. Wife was awarded the marital home, the shop, and a rental house owned by the parties. Husband's award of marital assets included the stock and land owned by T-MAC as well as the stock and assets of Moore Pumps. Husband appeals.

On appeal, Husband asserts that the trial court erred in classifying T-MAC as a marital asset and including it in his award. Husband also asserts that the trial court erred in awarding Wife alimony in futuro. In addition, Husband asserts that the trial court erred in awarding all of the parties' real property to Wife.

**Analysis**

Pursuant to Rule 13 of the Tennessee Rules of Appellate procedure, the standard of review is *de novo* upon the record, with a presumption of the correctness of the finding of the trial judge. As such, we find it appropriate to note that trial courts have broad discretion in dividing the marital estate and making an award of alimony upon divorce. Loyd v. Loyd, 860 S.W.2d 409, 411 (Tenn. Ct. App.1993); Lancaster v. Lancaster, 671 S.W.2d 501, 502 (Tenn. Ct. App.1984). In a non-jury case such as this one, we may reverse the trial court only if the evidence preponderates against the finding of the trial judge. See Rule 13(d) TENN. R. APP. P.

**A. Alimony Award**

3

Husband asserts that the trial court erred or abused its discretion in making an award of alimony in futuro of one thousand dollars a month to Wife until her death or remarriage. Husband claims that both the amount of alimony and the period over which it is to be paid are excessive. For the following reasons, we find that the trial court did not err in this award.

The trial court has broad discretion both in determining whether to award alimony and in determining the amount and duration of any alimony award. Tenn. Code Ann. § 36-5-101; <u>Young v. Young</u>, 971 S.W.2d 386, 390 (Tenn. Ct. App. 1997) citing <u>Aaron v. Aaron</u>, 909 S.W.2d 408, 410 (Tenn.1995); <u>Self v. Self</u>, 861 S.W.2d 360, 361 (Tenn.1993); <u>Brown v. Brown</u>, 913 S.W.2d 163, 169 (Tenn. Ct. App.1994); <u>Loyd v. Loyd</u>, 860 S.W.2d 409, 412 (Tenn. Ct .App.1993); <u>Houghland v. Houghland</u>, 844 S.W.2d 619, 621 (Tenn. Ct. App.1992); <u>Ingram v. Ingram</u>, 721 S.W.2d 262, 264 (Tenn. Ct. App.1986); <u>Lancaster v. Lancaster</u>, 671 S.W.2d 501, 503 (Tenn. Ct. App.1984); <u>Newberry v. Newberry</u>, 493 S.W.2d 99, 102 (Tenn. Ct. App.1973). Generally, the appellate court will not alter a trial court's award of alimony unless the award is not supported by the evidence or is contrary to the public policy embodied in the applicable statutes. <u>Brown</u>, 913 S.W.2d at 169; <u>Gilliam v. Gilliam</u>, 776 S.W.2d 81, 86 (Tenn. Ct. App.1988); <u>Ingram v. Ingram</u>, 721 S.W.2d 262, 264 (Tenn. Ct. App.1986).

The decision to award alimony is factually driven and requires a balancing of the factors set forth in Tenn. Code Ann. § 36-5-101(d)(1).[5] <u>Denton v. Denton</u>, 902 S.W.2d 930, 932 (Tenn. Ct.

---

[5] Tenn. Code Ann. § 36-5-101(d)(1) provides in relevant part: It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training

App.1995); Loyd, 860 S.W.2d at 412. Courts have previously determined that the two most important factors considered when deciding a proper award of alimony are the need of the spouse to whom alimony is awarded and the ability of the other to pay. Aaron, 909 S.W.2d at 410; Kincaid v. Kincaid, 912 S.W.2d 140, 144 (Tenn. Ct. App.1995); Smith v. Smith, 912 S.W.2d 155, 159 (Tenn. Ct. App.1995); McCarty v. McCarty, 863 S.W.2d 716, 720 (Tenn. Ct. App.1992); Loyd, 860 S.W.2d at 412; Gilliam, 776 S.W.2d at 86; Lancaster, 671 S.W.2d at 503; Cranford v. Cranford, 772 S.W.2d 48, 50 (Tenn. Ct. App.1989). In addition, the fault of a spouse in causing the divorce is considered in the alimony award determination. Tenn. Code Ann. § 36-5-101(d)(1)(K); Aaron, 909 S.W.2d at 410-11; Gilliam, 776 S.W.2d at 86. Under the statute, alimony in futuro is appropriate where there is relative economic disadvantage and rehabilitation of the disadvantaged party is not feasible. Self, 861 S.W.2d at 361.

The facts and circumstances in the case at bar fully support the trial court's award of alimony in futuro to Wife. The majority of Wife's married life has been spent as stay-at-home mother and homemaker. She has only a basic education and limited work experience, neither of which will provide much help in today's competitive workplace. On the other hand, Husband owns and operates his own business and has a higher earning capacity than Wife. In addition, while both parties' admit to past infidelities, the evidence at trial supported Wife's contention that Husband was physically and mentally abusive. Husband's behavior was certainly a contributing factor in causing the divorce.

Under the standard set forth above, we find that the trial court did not err in awarding alimony in futuro to Wife. The finding of the trial court on this issue is affirmed.

## B. T-MAC Metals and Real Estate

Husband also contends that the trial court erred in classifying T-MAC Metals as a marital asset and in including that asset in Husband's property award. Husband asserts that T-MAC is owned wholly by the parties' children and is therefore not a marital asset subject to equitable division. Based on the following, we find that the trial court erred in including T-MAC in the marital asset division.

The court below found that T-MAC was controlled by Husband and was therefore a marital asset. We disagree. While Husband certainly had considerable influence over T-MAC's operations, he had no ownership rights. Ownership of T-MAC's assets remained with the parties' children.

or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

5

Indeed, the evidence presented in the court below fully supports Husband's contention that T-MAC is not a marital asset. Although Husband may have provided the parties' children with the idea and investment capital, the corporation itself was not owned by the parties. All stock is owned by the parties' children. No distributions or profits have been paid to the parties since the corporation's inception. Husband is neither a shareholder, a director, nor an officer of T-MAC. T-MAC's tax returns, phone listing, and bank account are all separate from those of Moore Pumps. The property was deeded to T-MAC and the affidavit of consideration was signed by Michael Moore, an officer of T-MAC. Accordingly, neither T-MAC stock nor the land owned by the corporation are marital assets subject to equitable division.[6]

Based on the aforementioned facts, the evidence on this issue preponderates against the finding of the trial judge. Therefore, the trial court's holding on this issue is reversed. Accordingly, we find it unnecessary to address Husband's remaining issue regarding Wife's award of real property. The trial court's division of marital assets must be redetermined without including T-MAC. Therefore, this cause is remanded for further proceedings consistent with this holding.

### Conclusion

Based on the foregoing, the judgement of the trial court is hereby affirmed in part, reversed in part, and remanded. Costs on appeal are taxed to the appellant, Danny Michael Moore, for which execution may issue if necessary.

---

[6]While the corporation itself is not a marital asset, the five thousand dollar note securing the parties' loan of capital is a marital asset.